UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

STEPHEN ANDREW MORETTO,

      Plaintiff,

v.                        Case No: 2:23-cv-755-JES-NPM

R.J. SOLORZANO, TRUNG VAN
LE, G. NOE, M. HERNANDEZ,
CENTURION OF FLORIDA, and
WEXFORD HEALTH SOURCE,

      Defendants.

_____

**OPINION AND ORDER**

This matter comes before the Court on Defendants R.J. Solorzano and Centurion of Florida, LLC's Motion to Dismiss Amended Complaint (Doc. #24) and Plaintiff Stephen Moretto's Response (Doc. #30), as amended (Doc. #33). The Court grants the Motion for the following reasons. Defendant Wexford Health Source filed a Motion to Dismiss (Doc. #41) on September 17, 2024, and G. Noe and M. Hernandez filed a Motion to Dismiss (Doc. #47) on September 20, 2024, which are not yet ripe. The additional motions do not change the Court's analysis. The Court finds sua sponte that Moretto fails to state a claim against them. See 28 U.S.C. § 1915(e)(2).

## I.    Background

Moretto is a prisoner of the Florida Department of Corrections ("FDOC"), and he sues Defendants over the medical treatment he received for gastrointestinal problems.  The Court recounts the facts as alleged in Moretto's Amended Complaint, which the Court must take as true when considering whether the Amended Complaint states a claim.  See Chandler v. Sec'y Fla. Dep't of Transp., 695 F.3d 1194, 1198-99 (11th Cir. 2012).

Moretto has special medical needs due to a gastric bypass surgery he underwent in 1998, before he entered FDOC custody. When Moretto began his current prison sentence in 2012, he experienced vomiting and constipation, which he attributed to the food.  A doctor at Okeechobee C.I. prescribed Moretto a no-sugar, no-spice diet and the pain medication Naproxen, and he issued a Moretto a slow-eating pass.  Moretto was transferred to DeSoto Annex in 2015.  Moretto discussed his medical needs with Dr. Trung Van Le, who renewed his diet and Naproxen prescriptions.  Dr. Le and Dr. Solorzano continued to renew Moretto's Naproxen prescription in 2015 and 2016.

On September 30, 2016, a visiting nurse practitioner named Tufaro told Moretto that NSAIDS like Naproxen are harmful when taken in excess and even more harmful for Moretto due to his gastric bypass.  Tufaro advised Moretto to never take NSAIDS and

prescribed B-12 shots, vitamins, and antacids.   Tufaro said Moretto should remain on those prescriptions for life.

On November 19, 2019, Moretto learned his special diet pass would not be renewed due to a new policy for therapeutic diets. In the following months, Dr. Solorzano and Medical Director Hernandez rejected Moretto's repeated requests for renewal of his diet pass because he did not meet the FDOC's new criteria for therapeutic diets.

Moretto began experiencing heart burn and acid reflux in October 2021.  A nurse prescribed Famotidine and requested a referral to a gastroenterology ("GI") specialist.   Moretto continued to request renewal of his special diet, but those requests were denied.  On March 2022, multiple medical providers told Moretto they could not prescribe him a special diet because he did not meet the FDOC criteria.

On June 1, 2022, Moretto saw nurse practitioner Mosely, who told him Naproxen might have damaged his stomach, and said she would look into putting Moretto back on a special diet.  Moretto's diet pass was not renewed, and he continued suffering from severe acid reflux.  Mosely doubled his reflux medication.  On September 16, 2022, Dr. Santana prescribed Moretto a low fiber diet to mitigate acid reflux, and it helped.  On October 3, 2022, Mosely expressed concern that Moretto's stomach might be bleeding because

of the Naproxen.  She referred Moretto to a GI specialist at the Reception and Medical Center, where a surgeon scheduled Moretto for a colonoscopy.

Moretto was transferred to Charlotte C.I. on January 4, 2023. Four days later, Dr. Noe revoked Moretto's low fiber diet because he did not meet the criteria.  A nurse told Moretto that not many prisoners have a gastric bypass, so there is no special diet for it.  In March 2024, an ultrasound revealed that Moretto's thyroid is enlarged.  Moretto blames the food.

Moretto asserts six claims against Defendants.  In Counts 1 and 2, he alleges Centurion and Wexford failed to train the doctors they employ on the medical needs of people with a gastric bypass— specifically that people with a gastric bypass should not take NSAIDS.  Counts 3-6 allege the defendants were deliberately indifferent to Moretto's serious medical needs in violation of the Eighth Amendment when they prescribed Naproxen and rejected requests for a special diet.  Solorzano and Centurion argue Moretto fails to state a cause of action.

## II.  B. Legal Standard

When considering a motion to dismiss under Rule 12(b)(6), courts must accept all factual allegations in the complaint as true and view them in a light most favorable to the plaintiff. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The preferential

standard of review, however, does not let all pleadings adorned with facts survive to the next stage of litigation. The Supreme Court has been clear on this point—a district court should dismiss a claim when a party does not plead facts that make the claim facially plausible. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible when a court can draw a reasonable inference, based on facts pled, that the opposing party is liable for the alleged misconduct. See Iqbal, 556 U.S. at 678. This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 557 (internal quotation marks omitted)). And a plaintiff must allege more than labels and conclusions amounting to a formulaic recitation of the elements of a cause of action. Twombly, 550 U.S. at 555.

Moretto files his Amended Complaint under 42 U.S.C. § 1983. To state a § 1983 claim, a plaintiff must allege that (1) the defendant deprived him of a right secured under the Constitution or federal law, and (2) the deprivation occurred under color of state law. Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (citing Arrington v. Cobb Cnty., 139 F.3d 865, 872 (11th Cir. 1998)). In addition, a plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and

the constitutional deprivation.  Marsh v. Butler Cnty., Ala., 268 F.3d 1014, 1059 (11th Cir. 2001).

Moretto is representing himself in this action.  Courts hold the pleadings of pro se litigants to a less stringent standard than pleadings drafted by attorneys.  Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998).  But courts do not have a duty to "re-write" a pro se litigant's complaint to find a claim.  See Washington v. Dep't of Children & Families, 256 F. App'x 326, 327 (11th Cir. 2007).

**III. Analysis**

Moretto's claims are based on two theories: failure to train and deliberate indifference.  The Court will address the deliberate indifference claims first.

A. Deliberate Indifference

The Supreme Court held in Estelle v. Gamble "that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment."  429 U.S. 97, 104 (1976) (internal citation and quotation marks omitted).  But not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment."  Id. at 105.  "To establish a § 1983 claim for deliberate indifference, a plaintiff must show (1) a substantial risk of serious harm; (2) the defendants' deliberate

indifference to that risk; and (3) causation." Marbury v. Warden, 936 F.3d 1227, 1233 (11th Cir. 2019) (internal quotation marks and citation omitted). In the Eleventh Circuit, "[a] serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" Shaw v. Allen, 701 F. App'x 891, 893 (11th Cir. 2017) (quoting Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003)).

Deliberate indifference is akin to subjective recklessness as used in criminal law. To establish deliberate indifferent, a plaintiff "must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff." Wade v. McDade, 106 F.4th 1251, 1262 (11th Cir. 2024). A difference in medical opinion does not constitute deliberate indifference. Hernandez v. Sec'y Fla. Dep't of Corr., 611 F. App'x 582, 584 (11th Cir. 2015). Nor does the exercise of medical judgment by a care provider. Id. In any event, even if a defendant actually knew of a substantial risk to a detainee's health or safety, he cannot be found liable for deliberate indifference "if he 'responded reasonably to that risk.'" Wade, 106 F.4th at 1262 (quoting Farmer, 511 U.S. 825, 844-45 (1994)).

Moretto's deliberate-indifference claims against the individual defendants are based on two categories of decisions: prescribing Moretto Naproxen for pain and rejecting Moretto's requests for a special diet. Moretto was initially prescribed Naproxen by an unnamed physician who is not a party to this case. When Moretto was transferred to DeSoto Annex, he told Le he was taking Naproxen for pain, and Le renewed the prescription. Solorzano also renewed the prescription multiple times. The decisions to renew Moretto's prescription were exercises of medical judgment by Le and Solorzano. The prescriptions did not constitute deliberate indifference, even if other providers later disagreed with Le and Solorzano. See Hernandez, supra.

Moretto also fails to allege the Naproxen prescription caused him harm. He claims two nurse practitioners told him NSAIDS could damage his stomach, but he does not claim he experienced signs of stomach damage while taking Naproxen or that any stomach damage has since been discovered. If the Naproxen did injure Moretto, he might have a claim for medical malpractice or medical negligence, but the proper venue for such a claim is the appropriate Florida court. See Estelle, 429 U.S. at 107.

Moretto's deliberate-indifference claims based on the decisions of Solorzano, Hernandez, and Noe to reject his requests for a special diet fail for similar reasons. To start, neither

the Eleventh Circuit "nor the Supreme Court ha[s] ever held that the Eighth Amendment requires prison officials to indulge inmates' dietary preferences—regardless of whether those preferences are dictated by religious, as opposed to non-religious, reasons." Robbins v. Robertson, 782 F. App'x 794, 805 (11th Cir. 2019).  All the Eighth Amendment guarantees is a "well-balanced meal, containing sufficient nutritional value to preserve health."  Hamm v. DeKalb Cnty., 774 F.2d 1567, 1572 (11th Cir. 1985).

Moretto does not claim the food he receives is nutritionally inadequate.  Rather, he alleges Solorzano, Hernandez, and Noe separately considered his requests for a special diet, applied some unspecified criteria, and determined Moretto was not eligible under the FDOC policy on therapeutic diets.  Again, the defendants exercised their judgment.  The fact that Moretto and other medical professionals disagreed is not enough to establish deliberate indifference.  See Hernandez supra.

Moretto's deliberate-indifference claims against Wexford and Centurion also fail.  Private entities who provide medical services to inmates—like Wexford and Centurion—are equivalent to municipalities under § 1983.  Craig v. Floyd Cnty., 643 F.3d 1306, 1310 (11th Cir. 2011).  A municipality may only be held liable under § 1983 if its custom or policy causes the plaintiff's injury.  Moretto does allege that a change in policy led to the non-renewal

and subsequent rejections of his special diet pass, but it was the FDOC policy on therapeutic meals.  Moretto does not plausibly allege that Wexford or Centurion—or any of the individual defendants, for that matter—were responsible for the FDOC's change in policy.

        B. <u>Failure to Train</u>

Moretto claims Wexford and Centurion failed to train the doctors it employs on the medical needs of a person with a gastric bypass.  Centurion and Solorzano characterize Counts 1 and 2 as state medical malpractice claims, and they argue Moretto failed to satisfy Florida's pre-suit requirements for medical malpractice claims.  In response, Moretto clarifies that he is asserting a federal failure-to-train claim as recognized in <u>Cty. of Canton, Ohio v. Harris</u>, 489 U.S. 378, 388 (1989).  The Court will thus consider Counts 1 and 2 under the failure-to-train framework.

Inadequately training officials may be the basis of § 1983 liability only when the failure to train amounts to deliberate indifference to the rights of those with whom the officials interact.  <u>Cty. of Canton, Ohio v. Harris</u>, 489 U.S. 378, 388 (1989).  But a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." <u>Connick v. Thompson</u>, 563 U.S. 51, 60 (2011).  To succeed on a claim for failure to train, a plaintiff must establish "that

the municipality knew of a need to train…in a particular area and the municipality made a deliberate choice not to take any action." Boynton v. Cty. of Tallahassee, 650 F. App'x 654, 662 (11th Cir. 2016) (quoting Cold v. Cty. of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998)).

Moretto makes no specific allegations about Wexford's and Centurion's policies for training doctors. Rather, Counts 1 and 2 rest on the presumption that because the doctors prescribed Naproxen to Moretto, Wexford and Centurion must have failed to properly train them. That is not sufficient to state a failure-to-train claim. Moretto does not allege any facts from which the Court can infer that Wexford and Centurion knew they needed to train their doctors that inmates with gastric bypasses should not take NSAIDS. Moreover, as explained in the preceding section, Solorzano's and Le's decisions to renew Moretto's Naproxen prescription did not violate his constitutional rights. At most, it was medical negligence or medical malpractice. Wexford's and Centurion's alleged failure to train Solorzano and Le on the risks of NSAIDS for gastric bypass patients likewise does not raise to the level of deliberate indifference.

C. Statute of Limitations

Centurion and Solorzano assert the statute of limitations as an alternative basis for dismissal of Moretto's claims based on

the Naproxen prescriptions.  Florida's four-year statute of limitations applies.  <u>Chappell v. Rich</u>, 340 F.3d 1279, 1283 (11th Cir. 2003).  The clock begins running when a plaintiff knows or should know (1) he has suffered the injury that forms the basis of his complaint and (2) who inflicted the injury.  <u>Id.</u>  Moretto learned of the dangers of his Naproxen prescription on September 30, 2016, when nurse practitioner Tufaro told him NSAIDS could harm his stomach.  The statute of limitations ran in 2020, well before Moretto filed this action.  Thus, the claims based on Moretto's Naproxen prescriptions are time-barred.

## IV. Conclusion

At bottom, this is not a case in which the plaintiff's medical needs were ignored or untreated.  Moretto consistently received treatment for each ailment he alleges.  That treatment was not "grossly inadequate" or "so cursory as to amount to no treatment at all."  <u>Bingham v. Thomas</u>, 654 F.3d 1171, 1176 (11th Cir. 2011).  The fact that Moretto disagrees with some medical decisions made by some of his doctors does not create liability under § 1983.  If one or more defendants harmed Moretto by making an incorrect medical decision, he might have a state medical malpractice or negligence claim, but he has not stated a claim under the Eighth Amendment against any Defendant.  What is more, the claims based on Moretto's Naproxen prescriptions are time-barred.

The Court will dismiss this action and close the case because allowing Moretto to amend his complaint a second time would be futile. Moretto's claims do not fail due to curable pleading deficiencies. Rather, the factual allegations show that Moretto does not have an actionable Eighth Amendment claim based on the Naproxen prescriptions or special diet rejections.

Accordingly, it is hereby

**ORDERED:**

Defendants R.J. Solorzano and Centurion of Florida, LLC's Motion to Dismiss Amended Complaint (Doc. #24) is **GRANTED**. This action is **DISMISSED**. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment dismissing this action, and close this case.

**DONE and ORDERED** at Fort Myers, Florida, this ___23rd___ day of September 2024.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record

- 13 -